**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Dennis A. Granlund, Civil No. 00-1372 (DWF/AJB)

Plaintiff,

v.

**MEMORANDUM OPINION AND ORDER**

Air Line Pilots Association, International,

Defendant.

---

Dennis Granlund, P.O. Box 933, Mary Esther, FL 32569-0933, appeared *pro se.*

Robert Atmore, Esq., Lindquist & Vennum, 4200 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, and Elizabeth Ginsburg, Esq., Air Line Pilots Association, Legal Department 702, 1625 Massachusetts Avenue, Northwest, Washington, D.C. 20036, appeared on behalf of Defendant.

---

**Introduction**

The above-entitled matter came on for hearing before the undersigned United States District Judge on July 19, 2001, pursuant to Defendant's Motion for Summary Judgment. In the Complaint, Plaintiff alleges breach of contract; conspiracy; violation of due process; failure to adjust a grievance without intervention of bargaining representative; breach of duty of fair representation; discrimination in violation of the Americans with Disabilities Act; and retaliation in violation of the Americans with Disabilities Act. For the reasons set forth below, Defendant's motion is granted.

**Background**

The factual predicate of this case is long, tortured, and more fully described in the Court's order of January 26, 2001, in *Dennis Granlund v. Northwest Airlines. Inc.*, Civil No. 99-706 (D. Minn). For purposes of this motion, the Court offers this abbreviated factual recitation.

JUL 27 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD JUL 27 2001
DEPUTY CLERK

Dennis Granlund was a commercial airline pilot for Northwest Airlines, Inc. ("Northwest"), and, as such, he was a member of the Air Line Pilots Association, International ("ALPA"). In 1997, Granlund notified Northwest that, in the context of a child custody dispute, Granlund had been accused of being an alcoholic. Although Granlund had been evaluated by a psychologist in Florida and found not to meet the DSM-IV criteria for alcohol dependence, Northwest arranged for Granlund to undergo chemical dependency analysis at Hazelden (a local drug and alcohol treatment facility). Hazelden concluded that Granlund was an alcoholic.

Despite Northwest's insistence that Granlund complete Hazelden's substance abuse treatment program, Granlund refused Hazelden's services. Granlund instead obtained yet another evaluation of his chemical dependence, this time from a physician at Abbott Northwestern Hospital; this new evaluation concluded that there was insufficient evidence to conclude that Granlund was an alcoholic.

Granlund proceeded to demand a "third" neutral evaluation pursuant to Section 15(D) of the collective bargaining agreement between Northwest and ALPA. ALPA submitted this request on behalf of Granlund. ALPA eventually concluded, however, that Section 15(D) of the collective bargaining agreement ("CBA") did not entitle Granlund to another chemical dependence evaluation. ALPA continued to offer Granlund advice, but did not actively pursue his claim. Granlund challenged ALPA's decision regarding the application of Section 15(D); that decision was upheld by a Grievance Review Board (in September of 1997), the Norwest MEC (in October of 1997), and the Northwest System Board of Adjustment (in September of 1998). Granlund alleges that he did not receive notice of the final, September of 1998, decision until June of 1999.

Granlund was discharged by Northwest in November of 1997 for reasons apparently unrelated to Granlund's alleged chemical dependence.[1] ALPA filed a grievance on behalf of Granlund, challenging his termination. Eventually, after Granlund filed a lawsuit against Northwest related to his termination, Granlund ceased corresponding with ALPA regarding his termination grievance. After this Court dismissed Granlund's claims against Northwest, Granlund contacted ALPA regarding his termination grievance; an arbitration of the grievance commenced on May 1-2, 2001, and was continued until September. That grievance is still pending.

## Discussion

### 1. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

---

[1] In another case, referenced above, Granlund alleged that the reasons given by Northwest for terminating him (travel pass abuse) were merely pretext for discrimination based on perceived alcohol addiction and retaliation for Granlund asserting his rights under Section 15(D). Those claims were rejected by this Court, which granted summary judgment in favor of Northwest.

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**2. Discrimination and Retaliation Claims**

With respect to Granlund's claim for disability discrimination (Count 1), to state a *prima facie* case for discrimination on the basis of disability under the Americans with Disabilities Act or the Minnesota Human Rights Act,[2] Granlund must establish: (1) that he is disabled within the meaning of these statutes; (2) that he is qualified to perform the essential functions of the job (either with or without reasonable accommodation); and (3) that he suffered an adverse employment action under circumstances which could give rise to an inference of discrimination. *Gutridge v. Clure*, 153 F.3d 898, 900 (8th Cir. 1998); *Young v. Warner-Jenkinson Co., Inc.*, 152

---

[2]The Minnesota Human Rights Act prohibits discrimination in the employment context against individuals with disabilities. Minn. Stat. § 363.03(1). The M.H.R.A. defines a person with a disability as "any person who (1) has a physical, sensory, or mental impairment which materially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." Minn. Stat. § 363.01(13). Thus, the M.H.R.A. is slightly more lenient than the ADA in terms of the degree to which a person must be impaired before her condition is considered a disability. Nevertheless, the courts of the Eighth Circuit have consistently analyzed claims under the M.H.R.A. disability provision as analogous to claims under the ADA. *See, e.g., Miners v. Cargill Communications, Inc.*, 113 F.3d 820 (8th Cir. 1997), *cert. denied*, 118 S. Ct. 441 (1997); *Roberts By and Through Rodenberg-Roberts v. KinderCare Learning Centers, Inc.*, 86 F.3d 844 (8th Cir. 1996).

F.3d 1018,1021 (8th Cir. 1998). ALPA challenges both the second and third prong of Granlund's prima facie case.[3]

First, as this Court has previously held in Civil No. 99-706, the evidence strongly indicates that, at all times relevant to this cause of action, Granlund was not otherwise qualified to perform the job of commercial airline pilot because the Hazelden assessment had implications for Granlund's FAA certification. Granlund points out that he is now certified by the FAA to fly; however, there is no evidence–other than Granlund's bald assertions during the hearing–that Granlund was certified at any point in time during which ALPA allegedly discriminated against Granlund.

Second, and even more importantly, Granlund has failed to identify any action taken by ALPA which might be construed as an adverse employment action and which occurred under circumstances which might give rise to an inference of discrimination. Granlund seems to suggest that ALPA's "adverse employment actions" are: (1) ALPA's decision not to pursue Granlund's Section 15(D) grievance and (2) ALPA's failure to adequately prevent access to Granlund's confidential medical records. However, there is absolutely nothing in the record to suggest that these actions, even if they are construed as adverse employment actions, are the

[3] ALPA also argues that the claims are time-barred. Granlund received his "right to sue" letter from the E.E.O.C. on February 11, 1999; from that date he had 90 days in which to file a complaint. Granlund filed his original complaint against ALPA on May 12, 1999–within the limitations period. However, he failed to obtain or serve a summons for this complaint. Granlund later, in August of 1999, filed and served an "amended complaint." ALPA argues, quite persuasively, that the original timely complaint was fatally defective and that the "relation back" doctrine does not apply; indeed, Granlund's claims for disability discrimination and retaliation would appear to be time-barred. However, given that Granlund's claims are substantively deficient as well, the Court will consider Granlund's claims on their merits.

result of improper discrimination; Granlund identifies no circumstances, and the record contains no evidence of such circumstances, which might give rise to an inference of discrimination.

With respect to Granlund's retaliation claim (Count 2), again, there is no evidence that any action taken by ALPA was causally related to any protected activity on the part of Granlund. Frankly, it is difficult for the Court to articulate the infirmities in Granlund's case because his theory of the case is not at all clear. However, the Court has exhaustively reviewed the supporting documents Granlund has submitted, and the Court cannot find any evidence whatsoever from which a reasonable fact finder could conclude that ALPA engaged in some retaliatory action–or inaction–in response to Granlund asserting his statutory or constitutional rights.

**3. Breach of Contract, "Due Process," and Duty of Fair Representation Claims**

Granlund's claims for breach of contract[4] (Count 4) and for violation of "due process"[5] (Count 6) are clearly governed by or pre-empted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq.*, and are more properly considered claims against ALPA for breach of ALPA's duty to provide fair representation. *See, e.g., Deford v. Soo Line R. Co.*, 867 F.2d 1080, 1085-86 (8th Cir. 1989). As a result, these claims, as well as Granlund's explicit claim for breach of the duty of fair representation (Count 5) are subject to a six-month statute of limitations. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151 (1983). Every allegedly malicious or negligent

---

[4] Granlund's claim appears to be that ALPA misconstrued the CBA when representing him in the grievance process and therefore breached the duty to fairly represent him. Granlund's claim would thus require the Court to construe the CBA; as a result, the claim is pre-empted.

[5] Given that ALPA is not a state actor, the Court must assume that the "due process" to which Granlund refers is ALPA's duty under the RLA to provide fair representation.

action–or inaction–taken by ALPA occurred more than six months prior to Granlund commencing this action. Granlund's own argument is that "[t]he legal responsibility that ALPA must now answer for is focused around the summer of 1997 but does not culminate until the summer of 1999." Plaintiff's Memorandum in Opposition at 22. Thus, under Granlund's own analysis, ALPA's last actionable involvement was in the summer of 1999, but Granlund did not commence this action until, at the earliest, June of 2000. Granlund's claims for breach of contract, violation of "due process," and breach of the duty of fair representation are time-barred.[6]

**4. "Failure to Adjust a Grievance Without Intervention of Bargaining Representative"**

Granlund alleges that ALPA violated 29 U.S.C. § 159(a)[7] by including a provision in the CBA which gives ALPA exclusive control over appeals to the system board of adjustment. The statute Granlund cites states:

> [A]ny individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: *Provided further,* That the bargaining representative has been given opportunity to be present at such adjustment.

29 U.S.C. § 159(a). In his Complaint, however, Granlund does not allege that he was ever denied the opportunity to pursue a grievance directly with Northwest; in fact, Granlund

---

[6] Similarly, one of the allegations of Count 3 (styled "Failure to Adjust a Grievance Without Intervention of Bargaining Representative") is that ALPA selectively chose which grievances it would pursue. This also would appear to be a claim for breach of the duty of fair representation. As a result, this portion of Count 3 is similarly time-barred.

[7] The Court will assume, for purposes of argument, that this statutory provision does apply to Northwest and its employees and is not otherwise pre-empted by a provision of the Railway Labor Act. The Court makes this assumption simply because neither party directly addresses the applicability of the statute to Granlund, ALPA, and Northwest.

specifically alleges that he *did* pursue the Section 15(D) issue directly with Northwest without the intervention of ALPA. In short, Granlund does not allege facts which would suggest that ALPA, by its actions or inactions, violated 29 U.S.C. § 159(a).

**5. Conspiracy**

Granlund asserted a claim of conspiracy (Count 7) against ALPA, alleging that ALPA and Northwest conspired to coerce employees into signing back to work agreements rather than assisting employees pursue their grievances. In the Complaint, however, Granlund does not allege that he ever signed a back to work agreement, much less that he was coerced into signing such an agreement. In fact, when questioned on this point in the hearing, Granlund indicated that this claim is related to other pilots being coerced into signing back to work agreements; Granlund has no standing to pursue the claims of these other pilots on their behalf. ALPA is entitled to summary judgment on this claim.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. No. 105) is **GRANTED**; and

2. The **COMPLAINT** is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 27, 2001

DONOVAN W. FRANK
Judge of United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: JUL 27 2001

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500